IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL ACTION NO. 17-208-1** |
| | : | |
| **BASIL BEY** | : | |

**MEMORANDUM**

**McHUGH, J.**                                                                                          **September 23, 2020**

Defendant Basil Bey was convicted by a jury of conspiracy to distribute heroin and crack cocaine. Previously, I denied motions under both Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure. Mr. Bey now returns in advance of sentencing with a Motion to Bar the Application of Mandatory Minimum Sentencing Provisions which would be triggered either by the weight of the controlled substances, or by distribution of controlled substances within a protected location. (ECF #405). The centerpiece of Mr. Bey's motion is my decision in the *United States v. McLean*, 199 F.Supp. 3d 926 (E.D. PA. 2016)[1], in which I declined to apply one of the mandatory minimums applicable on grounds of substantive due process. For the reasons that follow, the concerns that led me to apply the 14th Amendment in *McLean* simply are not present given the record in this case. Accordingly, Defendant's Motion will be denied.

The most useful point of departure is to summarize my decision in *McLean*. The prosecution there was based on a law enforcement tactic referred to as "stash house sting." In such operations, the Government first uses informants in an attempt to create interest in the robbery of a stash house for narcotics, usually crack cocaine. If the informant reports that someone has expressed interest in committing such a crime, agents proceed to create a scenario

---

[1] The Government initially appealed the sentence but dropped the appeal after consultation with the Office of the Solicitor General.

whereby the stash house will be robbed by violent means. Of course, there is no stash house and no drugs, merely a trap for the unwary. Although many factors influenced my analysis, the principal concern in that case was that the defendant convicted was in many respects more of a braggart than he was a desperado, and the scenario constructed by the Government subjected him to penalties that outstripped his criminal culpability.

Among the principles I discussed in *McLean* were sentencing entrapment and sentencing factor manipulation, both of which have been analyzed by the Third Circuit Court of Appeals in a series of cases, without formal adoption by the Circuit. Sentencing entrapment "occurs when official conduct leaves an individual otherwise indisposed to dealing in a larger quantity or a different type of controlled substance to do so, and the result is a higher sentence." *United States v. Sed*, 601 F.3d 224, 230 (3d Cir. 2010). Sentencing factor manipulation "occurs when the Government clearly exaggerates the defendant's sentencing range, by engaging in a longer-than-needed investigation, and thus, increases the drug quantities by which the defendant is responsible." *Id.* at 231.

In my previous Memorandum Opinion of January 24, 2019, (ECF #341), I summarized the evidence in detail. Mr. Bey was not lured into any criminal activity. To the contrary, he was at the center of a highly sophisticated drug marketing operation, centered on a single telephone line that was passed from member to member. The focus of the Government's investigation was to uncover the extent of the drug trafficking organization, and those ultimately responsible for its operation. Significantly, a wiretap, one that ultimately proved critical in identifying various participants and confirming the agents' hypothesis as to how the conspiracy operated, did not go online until an advanced stage in the case. It was the wiretap that brought the investigation to a successful close.

Mr. Bey was intercepted telling a prospective customer that the others involved were "going to do whatever I tell them to do." (ECF 341 at 2). He was overheard boasting that he "had the best jack in the City, hands down." *Id.* When co-conspirator Reginald White was arrested by police in possession of the phone at the center of the operation, it was Mr. Bey who went to the City impound lot to retrieve it. *Id.* at 3. Mr. Bey also described himself to a prospective customer as the supplier of the narcotics being sold, *id.* at 3, and Mr. Bey can be heard discussing the scheduling of shifts for the various sellers. *Id.* at 3-4. At the point in time where the operation began to use a new phone, a text message was sent to its customer base advertising the number and identifying it as "Black's New Phone," Mr. Bey's nickname. *Id* at 5. And even when Mr. Bey was incarcerated at one point, he continued to give instructions as to the operation of the conspiracy from jail. *Id.* at 5-6. In short, as compared to the defendant in *McLean*, Mr. Bey's culpability was not in any way exaggerated by the actions of law enforcement. In that regard, having presided over the trial, and heard the agents' detailed descriptions as to how the investigation proceeded, I saw no evidence that was deliberately prolonged in order to result in a greater quantity of drugs that would trigger a higher sentence. The defense is correct that the Government had various opportunities to arrest Mr. Bey and bring its investigation to a close, but that is true in many ongoing investigations. The record here reflects that the Government had become aware of a consistent volume of narcotics being sold through the same telephone number on a regular basis over a prolonged period of time, and it was a legitimate law enforcement objective to pursue the full scope of the operation and to pursue the identity of all of the individuals involved.

Mr. Bey also objects to any potential enhancement of his sentence pursuant to USSG Section 2 D1, based upon his sale of narcotics within a protected location, in this case a

recreation center. Mr. Bey contends that there was manipulation because the Government's confidential informant specified the location for the meeting. Defendant's citation to the record on this point focuses on testimony elicited on cross-examination by defense counsel. The Government's brief refers back to earlier testimony by the agent and argues that the record clearly shows that it was Mr. Bey who chose the site of the meeting. Trial transcript 12/05/17 at 162.

Upon review of the trial transcript, it became clear that the Government's brief was in fact citing to the wiretap played to the jury, which, in accordance with standard practice, was not included in the transcription of the testimony at trial, because wiretap recordings, and their transcriptions are separately entered into the record, in this case as Government Exhibit C8. The Court directed the Government to resubmit the audio and its transcription for review. The Government is correct that the informant had first suggested a different location, but Bey objected that "right there is bad," and instead instructed the informant to "meet me at Dunkin Donuts at 3rd and Oregon." The location specified by Defendant was in fact close to Murphy Recreation Center, and thus within a protected zone. Mr. Bey can hardly complain that the Government manipulated the site of the meeting when in fact he was the one who chose it.

Consequently, Defendant's Motion will be denied in its entirety.

    /s/ Gerald Austin McHugh
United States District Judge